**THE ROSEN LAW FIRM, P.A.**
Laurence Rosen, Esq.
One Gateway Center, Suite 2600
Newark, NJ 07102
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRIS ARICO, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CHURCHILL CAPITAL CORPORATION IV, ATIEVA, INC. d/b/a LUCID MOTORS, MICHAEL KLEIN, JAY FARAGIN, and PETER RAWLINSON, <br><br> Defendants. | Case No: <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> <u>JURY TRIAL DEMANDED</u> |

Plaintiff Chris Arico ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by

1

and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, public filings, wire and press releases published by and regarding Churchill Capital Corporation IV ("CCIV" or the "Company") and Atieva, Inc. d/b/a Lucid Motors ("Lucid"), analysts' reports and advisories about CCIV, Lucid, and their pending merger, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded CCIV securities between January 11, 2021 and February 22, 2021, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district. Plaintiff also resides in this judicial district.

5.     In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## **PARTIES**

6.     Plaintiff Chris Arico, as set forth in the accompanying certification, incorporated by reference herein, purchased CCIV securities during the Class Period and was economically damaged thereby.

7.     Defendant CCIV is a blank check company, also known as a special purpose acquisition company ("SPAC"). SPACs raise money that is then used to buy a private company effectively taking that company public while avoiding the traditional IPO process. CCIV is a "shell company" as defined under the

Exchange Act because it has no operations and nominal assets consisting almost entirely of cash.

8.    Defendant CCIV is incorporated in Delaware and its head office is located at 640 Fifth Avenue, 12th Floor, New York, NY 10019. CCIV's common stock trades on the New York Stock Exchange (the "NYSE") under the ticker symbol "CCIV."

9.    Defendant Lucid is an automotive company specializing in electric cars. Defendant Lucid was founded in 2007 by Defendant Rawlinson (defined below).

10.    Defendant Michael Klein ("Klein") is the co-founder of CCIV and serves as the Chairman of the Board and the Chief Executive Officer ("CEO") of CCIV.

11.    Defendant Jay Taragin ("Taragin") serves as the Chief Financial Officer of CCIV.

12.    Defendant Peter Rawlinson ("Rawlinson")   serves as Lucid's CEO and Chief Technology Officer.

13.    Defendants Klein, Taragin, and Rawlinson are collectively referred to herein as the "Individual Defendants."

14.    Each of the Individual Defendants:

(a)    directly participated in the management of the Company;

4

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

15.    CCIV and Lucid is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

16. The scienter of the Individual Defendants and other employees and agents of the CCIV and Lucid is similarly imputed to CCIV and Lucid under *respondeat superior* and agency principles.

17. Defendants CCIV and Lucid and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Materially False and Misleading
### Statements Issued During the Class Period

18. On January 11, 2021, Bloomberg published an article entitled "Lucid Motors Is in Talks to List Via Michael Klein SPAC" which reported the following:

> Electric vehicle maker Lucid Motors Inc. is in talks to go public through a merger with one of Michael Klein's special purpose acquisition companies, according to people familiar with the matter.

> A transaction could be valued at up to $15 billion, the people said, asking not to be identified because the matter is private. Lucid, which is backed by Saudi Arabia's sovereign wealth fund, is working with financial advisers, the people added. The talks are ongoing but could still fall apart.

> Representatives for Lucid Motors and Klein declined to comment. A former Citigroup Inc. rainmaker, Klein has two SPACs that are on the hunt for deals. Churchill Capital Corp IV -- the largest one, having raised more than $2 billion last year -- is the vehicle considering a deal with Lucid, some of the people said.

> \*   \*   \*

> Churchill Capital Corp IV jumped as much as 40% in New York

trading Monday.

19. By January 22, 2021, the price per share of CCIV had risen significantly due to leaks and rumors regarding the now-pending merger with Defendant Lucid. Journalists from various news organizations reported that a deal was near completion and that a merger was imminent.[1]

20. On February 4, 2021, Forbes published an article entitled "Elon Musk's Ex-Chief Engineer Creates A New Car—And Says It Beats Tesla" which stated the following, in pertinent part, regarding Defendant Lucid:

> The $169,000 Lucid Air is coming this spring, and Peter Rawlinson claims it'll be the fastest, longest-range electric vehicle on the planet. He should know. A decade ago, he engineered Tesla's Model S.
>
> Peter Rawlinson has many goals for the Lucid Air. One is that it be hailed as the world's best electric car. "Nobody believes me, but we're about to take it to another level," he says in a pre-Christmas Zoom chat from the 300-year-old Warwickshire, England, farmhouse he calls home when not at Lucid Motors' Silicon Valley headquarters.
>
> \*       \*       \*
>
> Rawlinson wants to make at least 6,000 Airs at a new plant in Casa Grande, Arizona, this year, potentially generating $900 million of revenue. Volume could top 25,000 units in 2022 as versions of Air priced at $77,000 arrive. Further growth is expected with the 2023 introduction of an electric crossover, tentatively named Gravity,

---

[1] *See e.g.*, https://investorplace.com/2021/01/cciv-stock-lucid-motors-spac-merger-rumors-send-churchill-capital-climbing-again/.

followed by even cheaper and smaller models to compete with Tesla's top-selling Model 3.

21. On February 5, 2021, Defendant Rawlinson appeared on CNBC Friday morning with Jim Cramer and David Faber, sharing his thoughts on his company, plans for growth the electric vehicle market and rumors of a SPAC deal.[2]

22. On February 16, 2021, Defendant Rawlinson appeared on Fox Business News with Neil Cavuto touting that Defendant Lucid was aiming for a spring delivery of its first vehicles.[3] In the interview no mention was made of any impediments to the stated delivery time-frame.

23. On February 22, 2021, the long-anticipated merger agreement between Defendants CCIV and Lucid was announced. Defendant CCIV's and Defendant Lucid's transaction equity value was estimated at $11.75 billion.

24. The statements contained in ¶¶ 18-23 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the CCIV's and Lucid's business, operations and

---

[2] cnbc.com/video/2021/02/05/watch-cnbcs-full-interview-with-lucid-motors-ceo-peter-rawlinson.html; https://www.benzinga.com/m-a/21/02/19512748/churchill-capital-corp-iv-shares-rise-on-lucid-motors-cnbc-appearance-what-investors-should-know.

[3] https://video.foxbusiness.com/v/6232730504001#sp=show-clips.

prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Lucid's inability to produce cars in the first half of 2021; (2); Lucid's actual timeframe to produce cars; and (3) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## **THE TRUTH EMERGES**

25. Then, later on February 22, 2021, Bloomberg published an article entitled "Lucid SPAC Gives Up Some of Giant Gain After Pact Confirmed" which stated that Defendant Rawlinson announced that production of Defendant Lucid's debut car will be delayed until at least the second half of 2021, with no definite date for set for actual delivery of an actual vehicle.

26. Details of the merger also disclosed that Lucid was projecting the production of only 557 vehicles in 2021, instead of the 6,000 it had been touting in the run-up to the merger announcement.

27. On this news, shares of CCIV fell $22.16 per share, or 38%, to close at $35.21 per share on February 23, 2020, damaging investors.

28. Between the January 11, 2021 Bloomberg article and the official announcement of the merger on February 22, 2021 CCIV common stock skyrocketed from approximately $10 to over $57, or 470%.

9

29. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's shares, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

30. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired CCIV securities publicly traded on the NYSE during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of CCIV and Lucid, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

31. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, CCIV securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

32.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

33.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

34.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of CCIV and Lucid;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

11

- whether the Defendants caused CCIV and Lucid to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of CCIV securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

35. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

36. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- CCIV shares met the requirements for listing, and were listed and actively traded on the NYSE, an efficient market;

- As a public issuer, CCIV filed periodic public reports;

- CCIV regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- CCIV securities were liquid and traded with moderate to heavy volume during the Class Period; and

- CCIV was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

37. Based on the foregoing, the market for CCIV securities promptly digested current information regarding CCIV and Lucid from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

38. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants

omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I

### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder Against All Defendants

39. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

40. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

41. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

42. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made,

14

in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of CCIV securities during the Class Period.

43. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Defendants CCIV and Lucid were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Defendants CCIV and Lucid, their control over, and/or receipt and/or modification of CCIV's and Lucid's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Defendants CCIV and Lucid, participated in the fraudulent scheme alleged herein.

44. Individual Defendants, who are the senior officers and/or directors of the Defendants CCIV and Lucid, had actual knowledge of the material omissions

and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other CCIV and Lucid personnel to members of the investing public, including Plaintiff and the Class.

45.    As a result of the foregoing, the market price of CCIV securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of CCIV securities during the Class Period in purchasing CCIV securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

46.    Had Plaintiff and the other members of the Class been aware that the market price of CCIV securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased CCIV securities at the artificially inflated prices that they did, or at all.

47.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

16

48.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of CCIV securities during the Class Period.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

49.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

50.     During the Class Period, the Individual Defendants participated in the operation and management of CCIV and Lucid, and conducted and participated, directly and indirectly, in the conduct of CCIV and/or Lucid's business affairs. Because of their senior positions, they knew the adverse non-public information about CCIV's and Lucid's misstatement of revenue and profit and false financial statements.

51.     As officers and/or directors of a publicly owned company, Defendants Klein and Faragin had a duty to disseminate accurate and truthful information with respect to CCIV's and Lucid's financial condition and results of operations, and to correct promptly any public statements issued by Defendants which had become materially false or misleading.

52.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which CCIV and Lucid disseminated in the marketplace during the Class Period concerning CCIV's and Lucid's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause CCIV and Lucid to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of CCIV within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of CCIV securities.

53.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)    declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

18

(b)     awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c)     awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff hereby demands a trial by jury.

Dated: June 9, 2021                    **THE ROSEN LAW FIRM, P.A.**

*/s/Laurence M. Rosen*
Laurence M. Rosen, Esq.
One Gateway Center, Suite 2600
Newark, NJ 07102
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff